United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER J. WILLIAMS, individually and as next friend of XW, minor, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL CASE NO. H-23-302 |
| DEPUTY BOLIN individually, and in his official capacity; DEPUTY DANIEL KERRIGAN individually, and in his official capacity; DEPUTY MACIAS individually, and in his official capacity; HARRIS COUNTY, TEXAS; HARRIS COUNTY SHERIFF ED GONZALEZ individually, and in his official capacity, | § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Alexander J. Williams, individually and on behalf his minor son, X.W., sued Harris County, the Harris County Sheriff, and several deputies, alleging violations of his rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and state law intentional tort and constitutional claims. (Docket Entry No. 5). Harris County, Sheriff Ed Gonzalez, and Deputies Bolin, Kerrigan, and Macias moved to dismiss the amended complaint. (Docket Entry Nos. 9, 16–18). Following production of the body-worn camera footage, Deputies Bolin, Kerrigan, and Macias filed a supplemental brief addressing the video, and Mr. Williams responded (Docket Entry Nos. 32, 37).

In the encounter between Mr. Williams and Deputies Bolin and Kerrigan, none of the parties acquitted themselves well. The deputies unnecessarily escalated a minor parking offense to a situation that resulted in Mr. Williams's arrest in front of his minor son. Mr. Williams was unnecessarily defensive and hostile in response to the deputies' initial questions. The question

before the court is not whether the parties behaved well—they did not—but whether Mr. Williams can assert claims arising out of the incident. The court has reviewed the motion to dismiss, the briefs, the body-worn camera footage, and the supplemental briefs. For the reasons set out below, the court grants in part and denies in part the motions to dismiss.

I.      The Amended Complaint

Mr. Williams, a Black man, alleges that in May 2022, after buying candy and soda for his three-year old son at a convenience store, he placed his son in his truck. The truck was parked slightly over the line of a handicapped parking spot. (Docket Entry No. 5 at ¶ 21). The deputies pulled up behind Mr. Williams's truck. Finding his truck blocked by sheriff's department vehicles, Mr. Williams asked Deputy Kerrigan to move the vehicles. (*Id.* at ¶ 18). Deputy Kerrigan responded by asking Mr. Williams whether he planned to register his truck (it was not registered). (*Id.* at ¶ 19). Mr. Williams acknowledged the truck's lack of registration and indicated that he planned to register it. (*Id.*). Mr. Williams then began loudly stating that he was not a criminal and questioning why Deputy Kerrigan had asked about his registration. (Docket Entry Nos. 32-6, 32-7).

Deputy Bolin then approached Mr. Williams and asked for his identification. (*Id.*). Mr. Williams did not produce his identification but offered to provide his "identification number." (*Id.*). Deputy Bolin instructed Mr. Williams to turn around and handcuffed him. (*Id.*; Docket Entry No. 5 at ¶ 24). Mr. Williams asked if he could call someone to pick up his son. (Docket Entry No. 5 at ¶ 26). Mr. Williams alleges that Deputy Bolin then threw him to the ground; the body camera footage suggests that Mr. Williams may have fallen to the ground. (*Id.* at ¶ 27; Docket Entry No. 32-6). Deputy Kerrigan got out of his patrol car to help Deputy Bolin manage the handcuffed Mr. Williams. (Docket Entry No. 5 at ¶ 28). The two deputies placed Mr. Williams

in a patrol car. Mr. Williams alleges that Deputy Kerrigan repeatedly punched him, with Deputy Bolin's assistance. (*Id.* at ¶ 29). The body-worn camera footage does not contradict this allegation.

An unnamed deputy drove Mr. Williams to the Harris County Jail. The charges against Mr. Williams were dismissed for lack of probable cause eight days after his arrest. (*Id.* at ¶ 43).

During Mr. Williams's interaction with the deputies at the gas station, another—white—man approached Deputy Bolin and asked him to move the patrol car. (*Id.* at ¶ 35). That man was not questioned or detained by the deputies. (*Id.*). Mr. Williams alleges that another vehicle was parked similarly to his on the other side of the handicapped parking space, that is, slightly protruding into the handicapped space. (*Id.* at ¶ 36). The body-worn camera footage confirms this. (Docket Entry No. 32-6). There is no indication that the deputies took any action with respect to that vehicle.

## II.     The Legal Standards

### A.     Rule 12(b)(6) Motion to Dismiss

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must

"construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010).

### B. Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted).

A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

The first prong requires the plaintiff to point to facts that could support a finding of a constitutional rights violation. *Pearson*, 555 U.S. at 232. The second prong requires the plaintiff to show that "'the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (alterations in original) (citation omitted). In other words, "[t]o defeat qualified immunity, a plaintiff must demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Shumpert*, 905 F.3d at 321 (emphasis omitted) (quoting *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc)). "In determining what constitutes clearly established law, th[e] court first looks to Supreme Court

precedent and then [to Fifth Circuit precedent]. If there is no directly controlling authority, [the] court may rely on decisions from other circuits to the extent that they constitute 'a robust consensus of cases of persuasive authority.'" *Shumpert*, 905 F.3d at 320 (citations omitted).

At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "After the district court finds a plaintiff has so pleaded, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (emphasis omitted) (citations and internal quotation marks omitted).

### III. Analysis

#### A. Deputy Bolin and Deputy Kerrigan

Mr. Williams brings claims against Deputies Bolin and Kerrigan for excessive force, unlawful seizure, equal protection, and interference with family relationships. The deputies argue that Mr. Williams has failed to state a claim. In addition, they argue that any claim is barred by qualified immunity.

##### 1. The Excessive Force Claim

"To establish an excessive use of force claim, a plaintiff must demonstrate '(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable.'" *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). When evaluated whether officers used excessive force, the court must pay "careful attention to the facts and circumstances of each particular case[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989). These

facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The deputies argue that the force used was reasonable because Mr. Williams "was parked over the line of his parking spot" and "assertively respond[ed]" to Deputy Bolin. (Docket Entry No. 18 at ¶ 16). The deputies also point to Deputy Bolin's statement to Mr. Williams to "stop pushing off the truck," and state that Deputy Bolin had mistaken Mr. Williams for another person. (*Id.*).

Mr. Williams alleges that he had at most committed a minor parking violation. He alleges that was not resisting arrest or making any attempt to flee from the officers. He explicitly alleges that he was not resisting, notwithstanding Deputy Bolin's direction to "stop pushing off the truck." Nothing in the amended complaint or the deputies' motion to dismiss provides information about the man for whom Deputy Bolin allegedly mistook Mr. Williams. Mr. Williams's "assertive[] respon[se]" to a deputy that he wished to leave and had committed no crime is not an allegation that Mr. Williams resisted. In the body-worn camera footage, Mr. Williams does not resist being placed in handcuffs and he does not appear to resist being placed in the squad car. The defendant officers' supplemental brief about the body-worn camera footage describes Mr. Williams as "passively resist[ing]." (Docket Entry No. 32 at 2; Docket Entry No. 32-6). Even if the court construed Mr. Williams's response as passive resistance, that would not justify the officers' immediate use of physical force. *Joseph v. Bartlett*, 981 F.3d 319, 333 (5th Cir. 2020) ("As to a passively resisting suspect, an officer does not take measured and ascending action by immediately resort[ing] to taser and nightstick without attempting to use physical skill, negotiation, or even

6

commands." (internal quotation marks and citation omitted)); *see also Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (stating that "force is not justified" for passive resistance).

Mr. Williams alleges that Deputy Kerrigan "punched him with a closed fist multiple times" while Deputy Bolin assisted. (Docket Entry No. 5 at ¶ 29). The body-worn camera footage does not clearly contradict Mr. Williams's allegations. (Docket Entry Nos. 32-6, 32-7). In a similar case in which law enforcement hit the plaintiff once during a traffic stop in response to passive resistance, the court held that "a reasonable officer on the scene would have known that suddenly resorting to physical force as Officer Rogers did would be clearly excessive and clearly unreasonable." *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017).

This is not the first excessive force claim arising from police actions taken in response to an improperly parked car. In *Vardeman v. City of Houston*, 55 F.4th 1045 (5th Cir. 2022), the plaintiff sued after he was struck by an airport police traffic officer for failing to immediately move his car in response to officer instructions. *Id.* at 1048–49. The panel unanimously held that these allegations stated a claim for excessive force under the Fourth Amendment. *Id.* at 1052. The allegations in the amended complaint are sufficient to plead that the force Deputies Bolin and Kerrigan used was objectively unreasonable.

Although *Vardeman* was decided after the incident at issue, the applicable law was "clearly established," *Joseph*, 981 F.3d at 336, at the time. The Fifth Circuit had held that when "an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonable and excessive." *Hanks*, 853 F.3d at 748 (5th Cir. 2017). Similarly, in *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), the court found that officers were not entitled to qualified immunity when they "forcefully slam[med] [the plaintiff's]

7

face into a vehicle while she was restrained" in handcuffs. *Id.* at 501–02. The court has also held that repeatedly striking a person with a baton and tasing him in the face of only verbal resistance to the officer's conduct in conducting a pat-down related to a traffic violation, is excessive. *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); *see id.* at 763–64 ("Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.").

Mr. Williams at most committed a minor traffic offense. The body-worn camera footage shows that he did not physically or verbally threaten the deputies or others and did not attempt to flee. The deputies had sufficient notice that punching a handcuffed Mr. Williams constituted excessive force and a violation of Mr. Williams's constitutional rights. *Aguirre v. City of San Antonio*, 995 F.3d 395, 415 (5th Cir. 2021) (internal quotation marks and citations omitted) ("The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."). Mr. Williams has pleaded facts that, if proven, may show that the force used was unreasonably excessive so that Deputies Kerrigan and Bolin would not be entitled to qualified immunity. The record shows factual disputes that need discovery to determine whether qualified immunity is appropriate, or not. Those disputes preclude the court from determining on this record whether the deputies are, or are not, entitled to qualified immunity. The deputies may reassert the qualified immunity defense at summary judgment when a fuller record is available.

### 2. The Unlawful Arrest Claim

It is clearly established that a person has the constitutional right not to be arrested without a warrant or probable cause to believe that he is committing an offense. *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Michigan v. deFillippo*, 443

U.S. 31, 35 (1979). The deputies had no warrant. But unlawfully parking in a handicapped spot exposes a person to misdemeanor charges. TEX. TRANSP. CODE § 681.011(g). So too does failure to register a vehicle. *Id.* § 502.472; *see also id.* § 502.471(c) ("Unless otherwise specified, an offense under this section is a misdemeanor[.]"). Although Mr. Williams now denies that his car protruded into the handicapped space, (Docket Entry No. 37 at 5), the video shows his truck parked a few inches over the line into the handicapped parking space, (Docket Entry No. 32-6), and his complaint acknowledges the same (Docket Entry No. 5 at ¶ 21). Mr. Williams does not dispute that his vehicle was unregistered. The record shows that the officers had probable cause to arrest Mr. Williams. The unlawful arrest claim is dismissed.

### 3. The Equal Protection Claims

Mr. Williams claims that the defendants violated his equal protection rights. This claim appears to be based on the deputies' differential treatment of Mr. Williams compared to another driver whose vehicle was also parked to intrude into the adjacent handicapped parking space. (Docket Entry No. 5 at ¶ 36). Mr. Williams argues that this differential treatment demonstrates discriminatory intent. (*Id.* (referring to Deputy Bolin's "ulterior racial motives")).

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989), *abrogated on other grounds by Harper v. Harris County*, 21 F.2d 597 (5th Cir. 1994) (citing *Washington v. Davis*, 426 U.S. 229, 247–48 (1976)). "[O]fficial action will not be held unconstitutional solely because it results in racially disproportionate impact . . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977).

Mr. Williams's claims against the deputies are for selective enforcement. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). The plaintiff must show "that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.*

Mr. Williams alleges that he is a Black man, but he does not allege the race of the driver of the other car. Mr. Williams alleges that there was a white male who approached Deputy Bolin to ask him to move his squad car. (Docket Entry No. 5 at ¶ 35). He also alleges that "another vehicle was parked on the other side of the handicap space in a similar manner [to Mr. Williams's car] but without issue." (*Id.* at ¶ 36). There is no allegation that the other vehicle belonged to the white man who approached Deputy Bolin. The amended complaint allegations do not give rise to the inference that the deputies' selective enforcement resulted from an improper racial motive. The equal protection claims against the deputies are dismissed.

### 4.     The Interference with Familial Relationship Claim

Neither Mr. Williams nor the defendants have provided binding authority for the appropriate legal standard under which to evaluate Mr. Williams's claim, and the court has found none. District courts within this circuit to address this issue appear to agree that a plaintiff making such a claim must plead that the alleged interference was intentional. *Arreola as Next Friend of Vallejo v. City of Fort Worth*, No. 4:17-CV-00629-P, 2020 WL 3404120, at *7 (N.D. Tex. June 19, 2020) (citing *Molette v. City of Alexandria*, No. 04-CV-40501A, 2005 WL 2445432, at *5 (W.D. La. Sept. 30, 2005)); *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *9 (W.D. Tex. Nov. 15, 2006). These decisions refer to *Trujillo v. Bd. of Cnty. Com'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985), in which the court concluded that "an

allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is require to state claim under section 1983."

Mr. Williams has not alleged that the deputies intended to interfere with his relationship with his child when they detained and arrested him. The amended complaint does not allege that the deputies interacted with Mr. Williams's son. And there are no allegations that the deputies referred to Mr. Williams's son during their interaction with him. Mr. Williams must show that the deputies intended to interfere with his relationship with his son. As the *Trujillo* court observed, this showing cannot be made by reference to the deputies' allegedly unconstitutional conduct directed at Mr. Williams alone. *Id.* at 1190 ("Although the complaint alleges intent with respect to Richard's rights, this intent may not be transferred to establish intent to deprive his mother and sister of their constitutionally protected rights. The alleged conduct by the State, however improper or unconstitutional with respect to the son, will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right.").

Additionally, Mr. Williams has failed to show that the deputies violated clearly established law. Although he is correct that his relationship with his son is constitutionally protected, that is not enough to show a right that is "clearly established" for qualified immunity purposes. Mr. Williams does not cite authority that would support a finding that the deputies violated a clearly established right of familial relationships. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (stating that "clearly established law" cannot be defined "at a high level of generality") (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)).

Mr. Williams's claim for interference with a familial relationship is dismissed.

**B.    Deputy Macias**

Deputy Macias argues that the amended complaint does not contain factual allegations showing his personal involvement in any alleged constitutional injury inflicted on the plaintiffs.

11

(Docket Entry No. 17 at ¶ 14). Deputy Macias also argues that the allegations against him are conclusory. (*Id.* ¶ 15). In opposition, the plaintiffs argue that Deputy Macias is not entitled to dismissal. (Docket Entry No. 23 at 18).

The court agrees with Deputy Macias that the plaintiffs have not stated a claim against him. The complaint alleges that:

> [t]he defendants Bolin, Kerrigan, Macias, John Doe, Harris County, and Ed Gonzalez acting jointly and in concert and conspiracy, violated plaintiff's rights under the United States Constitution to be free from racial profiling, unlawful arrest, unlawful use of excessive force, and malicious prosecution.

(Docket Entry No. 5 at ¶ 172). The amended complaint also alleges that "Mr. Williams posed no threat of danger to Bolin or Macias, yet Mr. Williams was deprived of liberty by the unlawful arrest in front of his minor son . . . ." (*Id.* at ¶ 207).

These allegations fail to state a claim against Deputy Macias. Other than the brief mention in paragraph 207, no allegation suggests that he was at the scene of the incident. There are no allegations that Deputy Macias participated in any action that injured the plaintiff.

The claims against Deputy Macias are dismissed.

### C. The Personal Capacity Claims against Sheriff Ed Gonzalez

Sheriff Gonzalez argues that the personal capacity claims against him must be dismissed because the amended complaint does not allege that he personally participated in the allegedly unconstitutional actions giving rise to this suit. (Docket Entry No. 16 at 7). The amended complaint alleged that Sheriff Gonzalez is "Harris County's policymaker for law enforcement," and that he is "personally responsible" for "adopting and ratifying the actions of his deputies." (Docket Entry No. 5 at ¶¶ 45, 52). But these and the other allegations of the amendment complaint all point to Sheriff Gonzalez's official capacity liability, which is coextensive with Harris County's.

The personal capacity claims against Sheriff Gonzalez are dismissed, with prejudice because amendment would be futile.

### D. The Claims Against Harris County

Mr. Williams brings claims against Harris County for unlawful seizure (with respect to the arrests of minority-group members without probable cause), and equal protection or due process (with respect to Mr. Williams's inclusion in Harris County's "Gang Tracker Database").

Harris County and Sheriff Gonzalez, in his official capacity, cannot be held vicariously liable for the conduct of their employees or directly liable on the basis of respondeat superior. *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990). Municipal liability under § 1983 "requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting reference omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691))). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James*, 557 F.3d at 617–18 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

As the Fifth Circuit has summarized:

> [Fifth Circuit] caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (footnotes and citations omitted).

### 1. The Unlawful Arrest Claim

At the center of Mr. Williams's *Monell* claims are the "special elite units" created by Harris County "to harass [and] intimate individuals engaged in lawful conduct based on their race." (Docket Entry No. 5 at ¶ 38). Mr. Williams alleges that these units have engaged in the practice of making unlawful arrests and that the County has failed to create policies to prevent these unconstitutional practices. (*Id.* at ¶ 49–50). Mr. Williams alleges that, "between the time [he] was arrested and Sheriff Gonzalez came into office at least 48 individuals were arrested without probable cause based on the allegations in the filed criminal complaint." (*Id.* at ¶ 54). Mr. Williams then alleges a series of arrests in which charges were later dismissed for lack of probable cause. (*Id.* at ¶¶ 55–169).

Mr. Williams's claim for unlawful arrest fails because, as noted above, the presence of probable cause means that he has not stated a claim that his rights were violated. Because Mr. Williams's constitutional rights were not violated with respect to his arrest, Harris County cannot be liable as the "moving force" behind the alleged violation.

Additionally, the presence of dismissed criminal complaints, standing alone, does not show a discriminatory pattern or practice. A criminal complaint may be dismissed for a number of reasons, not merely a lack of probable cause to make an arrest in the first place. A prosecutor may

dismiss a complaint for reasons other than lack of probable cause. Mr. Williams has failed to plead that similarly situated defendants are treated differently based on their race. He does not plead, for example, the proportion of criminal complaints against people of color dismissed for lack of probable cause compared to other, similarly charged defendants. The allegations do not support an inference that Harris County has a policy or practice motivating the allegedly discriminatory arrests of minority-group members without probable cause.

### 2. The Equal Protection and Due Process Claims

Mr. Williams also appears to argue that the "Gang Tracker Database" used by Harris County violates his equal protection and due process rights. He alleges that "[h]e was made to allow the officers to analyze his tattoos to determine if they were gang related." (Docket Entry No. 5 at ¶ 180). Mr. Williams alleges that "[h]e has been unjustly documented as a street gang member." (*Id.* at ¶ 193).

Mr. Williams's allegations in the amendment complaint fail to demonstrate that he has standing to assert claims based on his inclusion in the Gang Tracker Database. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also* U.S. CONST. art III § 2. A plaintiff must "clearly . . . allege facts demonstrating," *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990), each element of standing: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Although Mr. Williams alleges that information in the Gang Tracker Database is provided to "potential employers, and local, state, and federal agencies," (Docket Entry No. 5 at ¶ 201), he does not allege that *his* information has been provided to individuals or entities outside the County.

Nor does Mr. Williams allege that he has suffered or is likely to suffer harm from his inclusion in the database. The complaint allegations do not satisfy the injury-in-fact requirement for standing.

### E. The State Tort and Constitutional Claims

Under the Texas Tort Claims Act, a party cannot bring a tort action against both a government employee and the government unit for which he or she works. TEX. CIV. PRAC. & REM. CODE § 101.106(e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). "Section 101.106 is an immunity statute and precludes claims against a governmental employee involving the same action, transaction, or occurrence without regard to whether the action against the employee is based on the same cause of action.[]" *Holland v. City of Houston*, 41 F. Supp. 2d 678, 717 (S.D. Tex. 1999). As long as the claim "involve[s] the same subject matter as the action brought against the governmental entity," then the claim against the employee is precluded. *Id*. (citing *Dallas Cty. Mental Health v. Bossley*, 968 S.W. 2d 339, 343 (Tex. 1998); *Newman v. Oberstellar*, 960 S.W.2d 621, 622 (Tex. 1997)). A suit against a government employee is a suit against the government entity. *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dismissed w.o.j.).

Mr. Williams brings intentional tort claims for assault and battery, false imprisonment, and intentional infliction of emotional distress against the deputy defendants and Harris County. The deputy defendants are employees of Harris County. Mr. Williams has also sued Harris County under the same causes of action. The deputies are entitled to dismissal of the state tort claims under the election of remedies provision of § 101.106.

"Under Texas law, sovereign immunity exists to 'protect the State and its political subdivisions from lawsuits and liability for money damages.'" *El Paso Indep. Sch. Dist. v. Richard*

16

*R.*, 567 F. Supp. 2d 918, 935 (W.D. Tex. 2008) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653 (Tex. 2008)); *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). "Sovereign immunity" includes "governmental immunity," which "protects political subdivisions of the state, including municipalities." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 935 (quotation marks and citations omitted); *Robison v. CNA Ins. Co.*, No. 1:17-CV-508, 2018 WL 10604116, at *6 (E.D. Tex. May 9, 2018) (governmental immunity protects "political subdivisions of the state . . . ." (quoting *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011))). "Both sovereign and governmental immunity deprive the Texas courts of subject matter jurisdiction." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 935 (citation omitted).

Sovereign immunity has two parts: "immunity from liability and immunity from suit." *Id.* (citation omitted). "Immunity from suit bars suit against the entity altogether." *Id.* (citation omitted). As governmental units, municipalities are "immune from suit and tort liability unless the legislature has waived immunity." *Duffie v. Wichita Cty.*, 990 F. Supp. 2d 695, 717 (N.D. Tex. 2013) (citing *Harris County v. Dillard*, 883 S.W.3d 166, 168 (Tex. 1994)). Unless a constitutional or statutory provision waives a governmental unit's immunity, that unit may not be liable for the torts of its officers or agents. *Id.* (citing *Bossley*, 968 S.W.2d at 341). "If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language." *Chambers-Liberty Ctys.*, 575 S.W.3d at 344 (citing TEX. GOV'T CODE § 311.034). A plaintiff has the burden of "alleging a valid waiver of immunity" to show that the court has subject-matter jurisdiction over state-law claims brought against a governmental unit. *Robison*, 2018 WL 10604116, at *6 (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015)).

Harris County has not waived its sovereign immunity, and the Texas Tort Claims Act does not apply to intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057; *see also City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). Sovereign immunity bars the state tort claims against the County.

Section 19 of the Texas Constitution states: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. The Texas Supreme Court has concluded that there is no meaningful distinction between the Texas Constitution's "due course" clause and the federal constitution's due process protections. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). Courts apply federal due process standards to claims under § 19. *See id.; Tex. Emp't Comm'n v. Remmington York, Inc.*, 948 S.W.2d 352, 357 (Tex. App.—Dallas 1997, n.w.h.).

A plaintiff cannot recover damages for violations of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995); *see also RBIII, L.P. v. City of San Antonio*, No. SA-90-CV-119-XR, 2010 WL 3516180, at *7 (W.D. Tex. Sept. 3, 2010) ("Texas Courts have held that the 'due course of law' clause of section 19 provides no private cause of action for damages."). A plaintiff may seek equitable relief under § 19. *Patel v. City of Everman*, 179 S.W.3d 1, 13 (Tex. App.—Tyler 2004, pet. denied); *Securtec, Inc. v. County of Gregg*, 106 S.W.3d 803, 816 (Tex. App.—Texarkana 2003, no pet.). Because this is an action for damages, (Docket Entry No. 5 at 50), the claims under the Texas Constitution are dismissed.

The court dismisses Mr. Williams's state-law claims, with prejudice, because amendment would be futile.

**IV.     Conclusion**

The court grants Sheriff Gonzalez's, Deputy Macias's, and the County's motions to dismiss.  (Docket Entry Nos. 9, 16, 17).

Deputies Bolin and Kerrigan's motion to dismiss, (Docket Entry No. 18), is denied with respect to Mr. Williams's excessive force claims and is otherwise granted.

The dismissal of the claims against Sheriff Gonzalez is with prejudice, as are the state-law claims against all defendants.  The dismissal of the unlawful arrest claim against the deputies and against the County is also with prejudice because amendment would be futile.

The remaining claims are dismissed without prejudice.  If Mr. Williams wishes to file an amended complaint against the County or the deputies, he must do so by **October 17, 2023.**

SIGNED on September 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge