United States District Court
Southern District of Texas
**ENTERED**
February 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER J. WILLIAMS, individually and as next friend of XW, minor, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL CASE NO. H-23-302 |
| DEPUTY BOLIN individually, and in his official capacity; DEPUTY DANIEL KERRIGAN individually, and in his official capacity; DEPUTY MACIAS individually, and in his official capacity; *et al.* | § § § § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

This case arises from what should have been an uneventful and brief encounter between law enforcement officers and a citizen. Instead, an officer's comment that a driver had parked slightly over the line separating his parking space from the next (which was empty and designated for handicapped parkers) led to an increasingly intense argument and ultimately arrest and custody. The question is whether the officers crossed a constitutional line during these events.

The court assumes familiarity with the facts laid out in its prior memorandum and opinion. (Docket Entry No. 38). Alexander J. Williams, a black man, pulled into a convenience store to buy his toddler son a drink. Mr. Williams parked slightly over the line between his parking space and the adjoining empty space. When Mr. Williams returned from a very brief stop inside the store, Harris County Deputies Bolin, Kerrigan, and Macias, pointed out his parking infraction and that his truck was unregistered. Mr. Williams acknowledged that he intended to register his truck, and then began loudly protesting that he was not a criminal and questioning why Deputy Kerrigan had checked his registration. Deputy Bolin then asked Mr. Williams for his identification, which Mr.

Williams did not produce. Deputy Bolin handcuffed Mr. Williams, who was asking if he could call someone to pick up his son. Mr. Williams alleges that Deputy Bolin then threw him to the ground; the body-worn camera footage suggests that Mr. Williams may have fallen. Deputy Kerrigan and Deputy Bolin placed Mr. Williams in a patrol car. Mr. Williams alleges that Deputy Kerrigan punched him, and the body-worn camera footage does not contradict Mr. Williams's allegations. (Docket Entry Nos. 32-6, 32-7).

Williams sued, alleging violations of his rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and state-law intentional tort and constitutional claims. (Docket Entry No. 43). The deputies have moved to dismiss the Second Amended Complaint. (Docket Entry Nos. 44–45). The court previously dismissed claims against Harris County and the Harris County Sheriff, with prejudice; dismissed claims against Deputy Macias without prejudice; and denied a motion to dismiss claims against Deputies Bolin and Kerrigan. (Docket Entry No. 38).

The court has reviewed the motions to dismiss, the body-worn camera footage, the record, and the applicable law. Based on this review, the court grants in part and denies in part the motions to dismiss. The reasons are explained below.

I.     The Legal Standards

   A.     Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

2

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

II.     Analysis

    A.     **Deputy Bolin and Deputy Kerrigan**

Mr. Williams brings claims against Deputies Bolin and Kerrigan for excessive force, violations of equal protection, and First Amendment violations, as well as interference with familial relationship on behalf of his son. (Docket Entry No. 43). The deputies argue that Mr. Williams has failed to state a claim. In addition, they argue that any claim is barred by qualified immunity.

        1.     **The Excessive Force Claim**

"To establish an excessive use of force claim, a plaintiff must demonstrate '(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable.'" *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). When evaluating whether officers used excessive force, the court must pay "careful attention to the facts and circumstances of each particular case[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989). These facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

In its memorandum and opinion dated September 26, 2023, (Docket Entry No. 38), the court denied the deputies' motion to dismiss the excessive force claim and determined that the defense of qualified immunity could not be accurately determined without the fuller record available at summary judgment:

> Mr. Williams at most committed a minor traffic offense. The body-worn camera footage shows that he did not physically or verbally threaten the deputies or others and did not attempt to flee. The deputies had sufficient notice that punching a handcuffed Mr. Williams constituted excessive force and a violation of Mr. Williams's constitutional rights. *Aguirre v. City of San Antonio*, 995 F.3d 395, 415 (5th Cir. 2021) (internal quotation marks and

4

citations omitted) ("The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.")

(Docket Entry No. 38 at 8).

The deputies repeat their arguments from their prior motion to dismiss, (*compare* Docket Entry No. 18 at ¶ 16 *with* 45 at ¶ 15), and now argue that they made "reasonable split-second decisions" after mistaking Mr. Williams "for another person Deputy Bolin had interacted with before who was involved in gangs." (Docket Entry No. 45 at ¶ 16). The court made its prior determination based on the body-worn camera footage, which shows the confrontation unfolding over several minutes. (Docket Entry No. 38). Deputy Bolin's defense regarding mistaken identity is insufficient at the motion to dismiss stage to warrant dismissal or a finding of qualified immunity.

### 2. The Equal Protection Claims

Mr. Williams claims that the defendants violated his equal protection rights. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989), *abrogated on other grounds by Harper v. Harris County*, 21 F.2d 597 (5th Cir. 1994) (citing *Washington v. Davis*, 426 U.S. 229, 247–48 (1976)). "[O]fficial action will not be held unconstitutional solely because it results in racially disproportionate impact . . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977). "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). The plaintiff

must show "that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.*

Mr. Williams alleges that he is a Black man, but he does not allege the race of the driver of the other car allegedly "parked on the other side of the handicap space in a similar manner." (Docket Entry No. 43 at ¶ 36). Mr. Williams alleges that there was a white male who approached Deputy Bolin to ask him to move his squad car. (*Id.* at ¶ 35). Mr. Williams does not point to other facts beyond these two—already discussed in the prior opinion—for showing selective enforcement. The equal protection claims against the deputies are dismissed.

### 3. Interference with Familial Relationship

In its prior opinion dismissing this claim, the court explained that a plaintiff making a claim of interference with familial relationship must plead that the alleged interference was intentional. *Arreola as Next Friend of Vallejo v. City of Fort Worth*, No. 4:17-CV-00629-P, 2020 WL 3404120, at *7 (N.D. Tex. June 19, 2020) (citing *Molette v. City of Alexandria*, No. 04-CV-40501A, 2005 WL 2445432, at *5 (W.D. La. Sept. 30, 2005)); *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *9 (W.D. Tex. Nov. 15, 2006). Mr. Williams has not alleged that the deputies intended to interfere with his relationship with his child when they detained and arrested him. He now argues that because he was detained for three days before his charges were dismissed, this shows an intention to separate him from his son. But interference cannot be made by reference to the deputies' allegedly unconstitutional conduct directed at Mr. Williams alone. *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985) ("Although the complaint alleges intent with respect to Richard's rights, this intent may not be transferred to establish intent to deprive his mother and sister of their constitutionally protected rights.").

Additionally, Mr. Williams has failed to show that the deputies violated clearly established law. He cites several cases showing that there are constitutional protections for familial relationships and claims that this clearly establishes the right. (Docket Entry No. 44 at 14). But for the purposes of qualified immunity, "clearly established law" cannot be defined "at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). Mr. Williams has pointed to no cases claiming that parents have a right to not be arrested in front of their child.

Mr. Williams's claim for interference with a familial relationship is dismissed.

### 4. First Amendment

Mr. Williams raises a new claim of First Amendment retaliatory arrest in his Second Amended Complaint. To establish First Amendment retaliation, a plaintiff "must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).

Mr. Williams alleges that the deputies arrested him because he asked "to leave and objected to the way he was being addressed by the deputy officers[.]" (Docket Entry No. 49 at 19). However, the body-worn camera footage shows that Mr. Williams was not arrested until he refused to provide identification after Deputy Bolin ordered him to do so. (Docket Entry Nos. 32-6, 32-7). Even if the court accepted Mr. Williams's characterization of the encounter, probable cause existed for the arrest, as explained in the court's prior opinion:

7

> It is clearly established that a person has the constitutional right not to be arrested without a warrant or probable cause to believe that he is committing an offense. *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Michigan v. deFillippo*, 443 U.S. 31, 35 (1979). The deputies had no warrant. But unlawfully parking in a handicapped spot exposes a person to misdemeanor charges. TEX. TRANSP. CODE § 681.011(g). So too does failure to register a vehicle. *Id.* § 502.472; *see also id.* § 502.471(c) ("Unless otherwise specified, an offense under this section is a misdemeanor[.]"). Although Mr. Williams now denies that his car protruded into the handicapped space, (Docket Entry No. 37 at 5), the video shows his truck parked a few inches over the line into the handicapped parking space, (Docket Entry No. 32-6), and his complaint acknowledges the same (Docket Entry No. 5 at ¶ 21). Mr. Williams does not dispute that his vehicle was unregistered. The record shows that the officers had probable cause to arrest Mr. Williams.

(Docket Entry No. 38 at 8–9). Nothing in Mr. Williams's Second Amended Complaint alters this analysis.

The First Amendment retaliation claim against the deputies is dismissed.

**B.      Deputy Macias**

The court previously dismissed the claims against Deputy Macias on the basis that he had no personal involvement in the alleged constitutional injuries. (Docket Entry No. 38 at 10–11). Mr. Williams now alleges that the body-worn camera footage shows Deputy Macias "sucker punching Mr. Williams[.]" (Docket Entry No. 43 at ¶ 29). Deputy Macias argues that the footage shows a different officer punching Mr. Williams, and that the footage shows Deputy Macias buckling Mr. Williams into the police car. (Docket Entry Nos. 44 at 7–8, 53 at 2). Having reviewed the body-worn camera footage, the court agrees that the footage shows Deputy Macias securing Mr. Williams's seat belt. Mr. Williams does not dispute this reading of the footage in his response. (Docket Entry No. 49).

Mr. Williams also appears to be stating a claim for bystander liability. "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. However, liability will not attach where an officer is

8

not present at the scene of the constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotation omitted). Mr. Williams pleads that Mr. Macias "stood by" and allowed the other officers to exert force on Mr. Williams. (Docket Entry No. 43 at ¶ 29). But the body-worn camera footage does not place Mr. Macias close enough to observe or intervene in the use of force. Mr. Williams does not plead facts that show where Mr. Macias was, or what reasonable opportunity he had to intervene to stop or lessen the force used against Mr. Williams.

These allegations fail to state a claim against Deputy Macias. The claims against Deputy Macias are dismissed.

### C. Punitive Damages

All three deputies urge the court to dismiss Mr. Williams's claims for punitive damages under *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017). In *Heaney*, the district court dismissed the punitive damages claim at summary judgment, after reviewing the underlying factual basis for the alleged violations but acknowledged that "in many instances a factual dispute as to a constitutional violation will preclude summary judgment on punitive damages." *Id.* "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Because this court does not have a sufficient or undisputed factual record regarding the excessive force claim to determine as a matter of law whether the challenged conduct does not meet these qualities, dismissal of the punitive damages claims as to Deputies Bolin and Kerrigan is premature. As with the deputies' qualified immunity claim, they may raise the issue again on summary judgment with a full factual record. All claims against Deputy Macias have already been dismissed.

**III.     Conclusion**

Deputies Bolin and Kerrigan's motion to dismiss, (Docket Entry No. 45), is denied with respect to Mr. Williams's excessive force and punitive damages claims and is otherwise granted.

Deputy Macias's motion to dismiss, (Docket Entry No. 44), is granted.

To the extent Mr. Williams pleaded any state-law claims, these were already denied with prejudice in the court's prior opinion. (Docket Entry No. 38 at 19).

The dismissed claims are dismissed with prejudice, as Mr. Williams has already amended his complaint twice and further amendment would be futile. The only remaining claims are the excessive force and punitive damages claims against Deputies Bolin and Kerrigan.

SIGNED on February 5, 2024, at Houston, Texas.

Lee H. Rosenthal
United States District Judge