United States District Court
Southern District of Texas

**ENTERED**

May 18, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ALEXANDER J. WILLIAMS, individually and as next friend of XW, minor, | § § § § | |
| | § | CIVIL ACTION NO. H-23-cv-302 |
| Plaintiff, | § | |
| v. | § § | |
| DEPUTY BOLIN individually, and in his official capacity; DEPUTY DANIEL KERRIGAN individually, and in his official capacity; DEPUTY MACIAS individually, and in his official capacity; *et al.*, | § § § § § § § | |
| Defendants. | § § § | |

**MEMORANDUM AND OPINION**

This case arises from an avoidable encounter between law enforcement officers and a citizen. Having already issued two thorough opinions that lay out the facts in this case, the court assumes familiarity with the facts. *See Williams v. Bolin*, 694 F.Supp.3d 904, 910–11 (S.D. Tex. 2023); *Williams v. Bolin*, No. H-23-302, 2024 WL 420900, at *1 (S.D. Tex. Feb. 5, 2024).

Alexander J. Williams, a black man, parked slightly over the line between his parking space and the adjacent space, which was marked as a reserved handicap space, in a convenience store parking lot. Williams went inside the store briefly to buy his toddler son a drink. When Williams and his son returned to the car, Harris County Deputies Bolin, Kerrigan, and Macias questioned Williams about how he had parked and the fact that his truck was unregistered. Williams responded that he intended to register his truck. He became increasingly defensive, insisting that he was not a criminal and asking why Deputy Kerrigan had checked his registration. Deputy Bolin asked

Williams for his identification, but he did not have it with him.   Deputy Bolin then handcuffed Williams, who was repeatedly asking to call someone to come get his son. Williams alleges that Deputy Bolin threw Williams to the ground, but the body-worn camera footage suggests he may have fallen. Deputies Kerrigan and Bolin placed Williams in a patrol car.  His son remained in Williams's car, by himself, crying loudly.   Williams alleges that Deputy Kerrigan punched him, and the body-worn camera footage appears to substantiate that allegation.

Williams sued, alleging violations of his rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and state-law and intentional tort and constitutional claims. (Docket Entry No. 5). The court dismissed claims against Harris County and the Harris County Sheriff, with prejudice; dismissed claims against Deputy Macias without prejudice; and denied a motion to dismiss claims against Deputies Bolin and Kerrigan. (Docket Entry No. 38). Williams amended his complaint, (Docket Entry No. 43), which these deputies moved to dismiss, (Docket Entry Nos. 44–45). The court granted in part and denied in part those motions, leaving only Williams's excessive force and punitive damages claims against Deputies Bolin and Kerrigan. (Docket Entry No. 54). Deputies Bolin and Kerrigan have now moved for summary judgment on these claims. (Docket Entry Nos. 76, 87).

The court has reviewed the motions, the responses, the body-worn camera footage, the record, and the applicable law. Based on this review, the court grants Deputy Bolin's motion for summary judgment, (Docket Entry No. 76), and Deputy Kerrigan's motion for summary judgment, (Docket Entry No. 87).  The reasons are explained below.

I.    **Legal Standards**

A.  **The Legal Standard for Summary Judgment**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party."  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c).  "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'"  *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

### B.  The Legal Standard for Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine is meant to give officers "breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting reference omitted).

4

Determining whether qualified immunity applies requires two inquiries. The first is whether the officer violated a constitutional right. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The second is whether the right was clearly established at the time the officer acted. *Id.* The court can decide "one question or both." *Id.*

A right can be clearly established without "a case directly on point." *Collie v. Barron*, 747 Fed. App'x. 950, 954 (5th Cir. 2018) (unpublished) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). A prior case involving "materially similar" facts is not required. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Instead, the question is whether prior decisions "gave reasonable warning" that the defendant's conduct violated constitutional rights. *Id.* at 740. In rare cases, reasonable warning may come from "a general constitutional rule" previously identified when the rule "appl[ies] with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* at 741 (quotation marks and quoting reference omitted) (alteration adopted); *see also D.C. v. Wesby*, 583 U.S. 48, 64 (2018).

The inquiry into whether a right is clearly established may not be conducted "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Courts must ask "whether the violative nature of *particular* conduct is clearly established." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). The constitutional question must be framed "with specificity and granularity." *Cunningham v. Castloo*, 983 F.3d 185, 193 (5th Cir. 2020) (quoting reference omitted). This is especially important in the Fourth Amendment context, in which "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). In the excessive force context, "officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Batyukova v. Doege*, 994 F.3d 717, 726

(5th Cir. 2021) (quoting *Kisela*, 584 U.S. at 104). "[T]he law must be *so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately." *Morrow*, 917 F.3d at 876 (citation omitted). The Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Wesby*, 583 U.S. at 64 (quotation marks omitted and alterations adopted).

Once qualified immunity is invoked, it is the plaintiff's burden to show that it does not apply. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). When a plaintiff fails to cite "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful," summary judgment is appropriate. *Cunningham*, 983 F.3d at 191, 194 (quoting reference omitted); *see also Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016).

## II.    Analysis

### A.  The Summary Judgment Evidence

Deputy Bolin's and Deputy Kerrigan's summary judgment evidence consists of the following:

1. Deputy Kerrigan's body-worn camera video footage, (Docket Entry Nos. 76-1, 87-1);

2. Deputy Bolin's body-worn camera video footage, (Docket Entry Nos. 76-2, 87-2);

3. Excerpts of Williams's deposition testimony, (Docket Entry Nos. 76-3, 87-4);

4. Deputy Macias's body-worn camera video footage, (Docket Entry Nos. 76-4, 87-3);

5. Excerpts[1] of Williams's medical records from jail, (Docket Entry Nos. 76-5, 87-5, 88);

---

[1] Deputy Bolin attached excerpts of Williams's medical records, (Docket Entry No. 76-5), but Deputy Kerrigan attached the entire medical record under seal, (Docket Entry Nos. 87-5, 88).

6. Post-arrest photos of Williams, (Docket Entry Nos. 76-6, 87-6);

7. Excerpts of Deputy Bolin's deposition testimony, (Docket Entry Nos. 76-7, 87-7); and

8. Excerpts of Deputy Kerrigan's deposition testimony, (Docket Entry Nos. 76-8, 87-8).

In his response to both motions, Williams attaches the following summary judgment evidence[2]:

1. Williams's declaration (Docket Entry No. 83-1);

2. The body-worn camera video footage from Deputies Bolin, Kerrigan, and Macias (Docket Entry No. 83-2);

3. The Harris County Criminal Court at Law's order to release Williams from custody for lack of probable cause (Docket Entry No. 83-3);

4. Excerpts of Deputy Kerrigan's interrogatory responses (Docket Entry No. 83-4);

5. Deputy Bolin's interrogatory responses (Docket Entry No. 83-5).

In response to Deputy Bolin's motion, Williams also attaches four additional pieces of evidence[3]:

1. A news article about Deputy Bolin's employment history at the Harris County Sheriff's Office that also mentions two federal lawsuits filed against Deputy Bolin, (Docket Entry No. 83-6);

2. Deputy Kerrigan's deposition testimony, (Docket Entry No. 83-7);

---

[2] In his response to Deputy Kerrigan's motion for summary judgment, Williams adopts Docket entries 87-1, 87-2, 87-3, 87-4, and 87-5. (Docket Entry No. 95 at 6).

[3] Williams does not include this evidence among the evidence listed in his response, but he attaches the evidence to his motion. (Docket Entry No. 83 at 5).

3. The second amended complaint in a lawsuit[4] filed against Deputy Bolin, among others, in this District, (Docket Entry No. 83-8);

4. Deputy Bolin's deposition testimony, (Docket Entry No. 83-9).

### B. The Evidentiary Objections

Williams objects to the admission of Deputy Bolin's and Deputy Kerrigan's deposition excerpts in support of both motions based on lack of completeness under Federal Rule of Evidence 106. (Docket Entry Nos. 83 at 4–5; 95 at 5–6). In response only to Deputy Kerrigan's motion, Williams also objects to his own deposition excerpts under optional completeness, excerpts of his medical records for lack of authentication under Rule 901, and his post-arrest photographs for lack of completeness under Rule 106. (Docket Entry No. 95 at 5–6).

Deputies Bolin and Kerrigan object to Williams's use of the following exhibits in support of his responses to their motions:

1. Williams's declaration on the basis that it's "a sham" because it contradicts Williams's deposition testimony and the deputies' body-worn camera video footage, (Docket Entry Nos. 84 at 1–2; 97 at 1–2);

2. The Harris County Criminal Court at Law's order to release Williams from custody for lack of probable cause, (Docket Entry No. 83-3), on the grounds that it is irrelevant under Federal Rules of Evidence 401 and 402 and that the court has already ruled Williams's arrest was lawful in *Williams*, 694 F.Supp.3d at 914, (Docket Entry Nos. 84 at 2; 97 at 3);

3. Deputies Bolin's and Kerrigan's interrogatory responses because Williams failed to attach them to his response to Deputy Kerrigan's motion and Williams must attach

---

[4] *Kristopher Willis v. Christopher Bolin, et al.*, No. 4:25-cv-2140 (S.D. Tex.).

Deputy Kerrigan's full interrogatory responses under the rule of optional completeness, (Docket Entry Nos. 83 at 2; 97 at 3).

Deputy Bolin also objects to the news article about his employment history, (Docket Entry No. 83-6), as irrelevant under Federal Rules of Evidence 401 and 402, and he objects to the complaint filed in the other lawsuit against him, (Docket Entry No. 83-8), on the basis that it is not competent summary judgment evidence. (Docket Entry No. 84 at 3).

As the court explains in the subsequent section, the court need not rule on these objections except for Williams's objection to his medical records and his objection to the post-arrest photos. (Docket Entry No. 95 at 5–6). Williams's medical records and the post-arrest photos are necessary to establish an injury caused by the deputies' alleged excessive force. *See Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (listing injury as one of the elements of an excessive force claim). Williams argues that the medical records have not been authenticated under Federal Rule of Evidence 901, and they are misleading and incomplete "if defense provides only certain angles or only certain dates." (Docket Entry No. 95 at 5). Both arguments are baseless.

As Deputy Kerrigan notes, Williams provided the medical records in his disclosures, and Williams does not object to the excerpted version of the medical records that Deputy Bolin attached in support of his motion. (Docket Entry No. 98 ¶ 1). Williams's objection to the post-arrest photos as incomplete under Federal Rule of Evidence 106 due to "defense cherry-picking favorable lines" is also baseless. (Docket Entry No. 95 at 6). Williams provides no support for the allegation that Deputy Kerrigan excluded photos, and Deputy Kerrigan observes that Williams "also has access to and can point to any photos" he would like the court to consider. (Docket Entry No. 98 ¶ 1). The court finds the medical records and the post-arrest photos competent summary judgment evidence.

### C. Video Evidence

The three body-worn camera videos are the crucial evidence in this case, and none of them is contested. (Docket Entry Nos. 76-1, 76-2, 76-4). When "video evidence provides so much clarity that a reasonable jury could not believe [an alternative] account," including the nonmoving party's, the court should "view[] the facts in the light depicted by the videotape." *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Norman v. Ingle*, 151 F.4th 707, 712 (5th Cir. 2025) (finding video evidence provided "sufficient clarity that no reasonable jury could find that either deputy violated [the plaintiff's] constitutional rights—clearly established or not").

The video evidence shows almost the entirety of Williams's encounter with Deputies Bolin and Kerrigan. When viewed together, the three videos clearly show the series of events underlying Williams's excessive force claim. Deputy Bolin, Deputy Kerrigan, and Williams present similar versions of the facts, all of which are largely consistent with the videos. (Docket Entry Nos. 76, 83, 87, 95). The difference is that Williams's version exaggerates the events to his benefit. (Docket Entry No. 83-1). The parties do not "tell two different stories, one of which is blatantly contradicted by the record," as much as they tell one similar story that the video evidence clarifies. *Scott*, 550 U.S. at 380. Still, with the videos' clarification, "no reasonable jury could believe" Williams's exaggerated depiction of events. *Id.* Consistent with Supreme Court and this Circuit's precedent, the court adopts the videos' "version of the facts for [the] purposes of ruling on [the] motion[s] for summary judgment." *Id.*; *see Norman*, 151 F.4th at 712; *contra Darden*, 880 F.3d at 730 (explaining how the video evidence fails to provide sufficient clarity); *contra Ramirez v. Martinez*, 716 F.3d 369, 374–75 (5th Cir. 2013) (concluding the court must "view the evidence in the light

most favorable to [the plaintiff]" because the video "does not clearly show a punch or every particular element of the altercation").

### D. Qualified Immunity on Excessive Force

Williams argues that Deputies Bolin and Kerrigan violated his constitutional right to be free from excessive force. To establish an excessive-force claim under the Fourth Amendment, Williams must show an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell*, 868 F.3d at 340 (quoting reference omitted). "The last two elements collapse into a single objective-reasonableness inquiry." *Norman*, 151 F.4th at 712 (quoting *Bailey v. Ramos*, 125 F.4th 667, 680 (5th Cir. 2025)) (internal quotation marks omitted). To determine the reasonableness of an officer's use of force, we apply the *Graham* factors, which include: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 713 (quoting *Bailey*, 125 F.4th at 680)); *see Graham v. Connor,* 490 U.S. 386, 396 (1989).

A court considers only the information available to the officers at the time. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. A court must also recognize that officers often must make split-second decisions in stressful situations. *Id.* Officers cannot be personally liable unless the law at the time clearly established that the use of force was unreasonable. *Id.*

Finally, "[w]hen a plaintiff asserts claims against multiple officers stemming from a single event, a reviewing court of course must analyze the officers' actions separately." *Norman*, 151

F.4th at 712 (quoting *Buehler v. Dear*, 27 F.4th 969, 985 (5th Cir. 2022)) (internal quotation marks omitted).

In its earlier opinion denying the deputies' motion to dismiss Williams's excessive force claim, the court concluded that Williams had sufficiently pleaded facts that, if proven, may show unreasonably excessive force such that Deputies Bolin and Kerrigan would not be entitled to qualified immunity. *Williams*, 694 F.Supp.3d at 912–14. At the summary judgment stage, the court now finds that Williams has failed to show that the deputies used excessive force such that they are not entitled to qualified immunity.

Beginning with Williams's injuries, the court finds that they are minor—but not so minor that the court ends its excessive-force inquiry here. "[T]he injury requirement is a sliding scale, not a hard cutoff." *Buehler*, 27 F.4th at 982. "The amount of injury necessary to satisfy the requirement of some injury is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996)) (citation modified). "As long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)). "Still, a reviewing court should consider the seriousness of the alleged injuries in determining whether the officer's conduct was objectively reasonable." *Id.* (quoting *Harper v. Harris Cnty.*, 21 F.3d 597, 601 (5th Cir. 1994)) (citation modified).

Williams suffered a "minor" "facial abrasion" to his left cheek, "mild tenderness and mild swelling to the [left] lateral neck," "wrist pain," and "neck pain." (Docket Entry No. 76-5 at 1–8). The medical records describe the "facial wound" as "superficial" and a "scratch under left eye." (*Id.* at 6–7). The medical records further document that Williams "[d]enie[d] any other injuries" at

this assessment immediately following his arrest. (*Id.* at 4). The treatment plan for these injuries

was "self-care," and no medications were administered. (*Id.* at 5). Additionally, as in *Buehler*,

photographs taken of Williams's face and torso at the time of his arrest "reveal that any lacerations"

or bruises "he suffered were so minor as to be essentially invisible." 27 F.4th at 983; (Docket Entry

No. 76-6 at 9–10). Photographs from security camera footage in the jail also show him walking

easily without help and "with no signs of physical injury or mental distress." *Buehler*, 27 F.4th at

983; (Docket Entry No. 76-6 at 11–15). The limited extent of Williams's injuries supports the

deputies' arguments that they acted reasonably. *See Buehler*, 27 F.4th at 983.

The excessive force claim centers on the deputies' efforts to get Williams into a patrol car

on two separate occasions. The first occasion took place after Williams told Deputy Bolin that

Williams did not have any identification, and Deputy Bolin handcuffed and frisked Williams.

(Docket Entry No. 76-2 at 0:45–1:15). As Deputies Bolin and Kerrigan walk Williams to the patrol

car, Williams repeatedly yells, "I need to make sure my son's straight" and resists walking closer

to the car by pulling backwards and locking his feet and legs in place. (Docket Entry No. 76-1 at

5:53–6:10; *Id.* at 1:15–1:30). After Deputy Kerrigan opens the patrol car door, Williams puts his

left foot up on the footboard and then drops the foot back to the ground to push against the deputies

as they try to get him in the patrol car. (Docket Entry No. 76-1 at 5:53–6:14). Deputy Bolin then

kicks his leg under Williams's left leg to move it, Williams loses his footing, and he falls to the

ground while both deputies are still holding on to him. (*Id.* at 6:10–6:14). Williams's son starts

crying in the car. (*Id.*) Deputy Kerrigan says, "Listen to your kid now," and Williams yells back

several times, "You racist bitches" and "Y'all being racist." (*Id.* at 6:10–6:21; Docket Entry No.

76-2 at 1:35–1:45). The two deputies then pull Williams up, and he sits on the edge of the patrol

car seat with his legs hanging out of the car. (Docket Entry No. 76-1 at 6:21–6:48). Williams braces

13

his feet against the open patrol car door and hooks his feet underneath the door to prevent the deputies from being able to force him into the car. (Docket Entry Nos. 76-1 at 6:21–6:48). Deputy Kerrigan tells Williams to "[g]et in the f****** car" and punches Williams once in the head and once in the abdomen while Williams repeatedly yells, "What law did I break?" (Docket Entry Nos. 76-1 at 6:21–6:48). Williams scoots back into the seat far enough for his legs and feet to be fully in the car, and Deputy Bolin pulls Williams from behind into the patrol car. (*Id.* at 6:48–7:01; Docket Entry No. 76-2 at 2:00–2:25).

Deputy Kerrigan's and Deputy Bolin's actions did not violate Williams's clearly established rights. Williams's behavior did not pose an immediate threat to the officers' safety, nor was he trying to flee, both of which weigh against the use of force. *See Westfall v. Luna*, 903 F.3d 534, 548 (5th Cir. 2018). However, Williams actively resisted the deputies' repeated instructions to get into the patrol car by ignoring their instructions, arguing with the deputies, and repeatedly calling them racist. "Officers may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to effectuate the suspect's compliance." *Darden*, 880 F.3d at 729 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)) (citation modified). In doing so, "[o]fficers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Id.* (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)) (citation modified). Williams physically resisted the deputies only after he was handcuffed. *Contra Nottingham v. Finsterwald*, 455 Fed. App'x 460, 461 (5th Cir. 2011) (per curiam) (reversing a grant of qualified immunity because there were genuine fact disputes about which defendants struck the plaintiff and whether he sustained his "injuries before or after he was handcuffed" and, "[u]nder [the plaintiff's] version of events, the Defendants would not have been justified in striking him after he was handcuffed as there [wa]s no evidence that he resisted at that

14

time"). The record is replete with unfortunate escalations of events by Williams and the deputies. And while the deputies' verbal retorts unnecessarily intensified the encounter, a reasonable officer could have concluded that some force was necessary to make Williams comply with the deputies' commands. *See Osborne v. Harris Cnty.*, 97 F.Supp.3d 911, 937–38 (5th Cir. 2015).

The second occurrence of force took place after the deputies had extricated Williams from the patrol car to photograph his face and abdomen and when they tried to get him back in the car. Standing next to the open car door with his back to the backseat, Williams asks the deputies where they are going, and Deputy Kerrigan responds, "JPC," meaning the Joint Processing Center. (Docket Entry No. 76-1 at 39:50–39:57). Williams asks what for, and Deputy Kerrigan says, "for interfering with the duties of a police office." (*Id.* at 39:50–40:00). Williams asks, "How did I interfere?," and Deputy Kerrigan responds, "Because of all this," gesturing at Williams standing outside the patrol car and resisting going to the JPC. (*Id.* at 39:50–40:05). Williams starts arguing with the deputies, demanding several times to know how he interfered.  The deputies calmly ask him several times to get back in the car. (*Id.* at 40:00–40:13; Docket Entry No. 76-2 at 35:25–35:35).  Williams asks if they are going to punch him again, to which both deputies respond, "I don't want to." (Docket Entry Nos. 76-1 at 40:10–40:15; 76-2 at 35:30–35:40). Williams goads the deputies, saying "Get you another one. I'm a real one. I'm a man. Catch you another one." (Docket Entry No. 76-1 at 40:15–40:20). Deputy Bolin then puts his open hand on Williams's chest to coax him into the patrol car. (*Id.*). When nothing happens, Deputy Bolin lowers his shoulders to be level with Williams's abdomen, wraps his arms around Williams's legs, and effectively tackles Williams to push him into the backseat. (*Id.* at 40:20–40:25). Deputy Bolin then punches Williams approximately twice in the shoulders and upper chest area. (Docket Entry No.

76-2 at 35:45 – 36:00). Throughout these events, Williams laughs hysterically and tells Deputy Bolin, "You punch like a bitch." (Docket Entry No. 76-1 at 40:20–40:41).

Although unfortunate and arguably unnecessary, the deputies' encounter with Williams did not violate his clearly established rights. As this court noted in a similar case, "[t]he Fifth Circuit cases finding excessive force used to respond to resistance involve either a greater degree of force or force applied after the plaintiff was restrained and no longer resisting." *Osborne*, 97 F.Supp.3d at 936–37 (citing cases). The same is true in this case. Although Williams was already handcuffed, the deputies applied force only after repeatedly and calmly instructing Williams to get back in the car and after Williams repeatedly argued with them and refused to follow their instructions. (Docket Entry Nos. 76-1 at 40:00–40:15; 76-2 at 35:25–35:40). Williams's refusal to comply with and his resistance to the deputies' commands to get in the police car made the use of some force reasonable. *See Orr v. Copeland*, 844 F.3d 484, 492–93 (5th Cir. 2016) (noting that a suspect's refusal to comply with instructions factors into officers' assessment of whether physical force is needed to make the suspect comply). The deputies "react[ed] with measured and ascending responses" by first giving repeated and calm oral commands, then firmly guiding Williams with their hands, and only after those efforts failed, tackling and punching Williams for the purpose of getting him in the car. *Id.*

Williams did not give indications that the force used was wanton or excessive. He did not cry for help, scream in pain, request medical attention, or indicate that he was injured. *See generally* (Docket Entry Nos. 76-1, 76-2); *see also Buehler*, 27 F.4th at 983 (citing the plaintiff's failure to "seek medical attention" for his "bruising and pain" as indicative of his limited injuries and supportive of "the Officers' argument that they acted reasonably"). On the contrary, Williams teased the deputies that their punches were weak, needled them to punch him again, and laughed

16

hysterically when Deputy Bolin forced Williams into the car by tackling him onto the backseat and punching him twice. *See* (Docket Entry No. 76-1 at 40:15–40:20). The evidence shows that the deputies used only the amount of force necessary to get Williams to comply with their orders to get into the patrol car and that they did not attempt to hurt Williams while doing so. *See Weldy v. Hatch*, 481 Fed. App'x 119, 123 (5th Cir. 2012) (affirming the district court's grant of qualified immunity because the "evidence [did] not show that [the officers] struck [the plaintiff], attempted to hurt her, or used more force than necessary to accomplish the arrest").

The deputies' actions walk close to the line of reasonableness given the minor nature of Williams's crime and the lack of threat he posed to the deputies—but the deputies did not cross it. Williams has failed to show that a constitutional violation occurred, and as a result, Deputy Bolin and Deputy Kerrigan are entitled to qualified immunity on Williams's excessive force claims.

## III.     Conclusion

Based on the foregoing, the court grants the motions for summary judgment, (Docket Entry Nos. 76, 87), and dismisses Williams's claims for punitive damages. The court will enter final judgment separately.

SIGNED on May 13, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

17